UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GYOUNG S. PARK,

                              Petitioner,

-against-

**MEMORANDUM & ORDER**

17-CV-686 (NGG)

UNITED STATES OF AMERICA,

                              Respondent.
------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

15-CR-364 (NGG)

GYOUNG S. PARK,

                              Defendant.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

On October 23, 2015, Petitioner pled guilty to one count of willful failure to collect and pay taxes in violation of 26 U.S.C. § 7202, in connection with her ownership and operation of Empire State Auto, Inc. ("Empire"), an automobile repair business located in Queens, New York. (Oct. 23, 2015, Min. Entry; see also Indict. (Dkt. 1).)[1] Petitioner was sentenced to an incarceratory term of one year plus one day, three years of supervised release, a $25,000 fine, and restitution of $770,823. (J. (Dkt. 18).) Now before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (the "Petition"), in which Petitioner seeks to vacate her sentence on grounds of ineffective assistance of counsel. (Mot. to Vacate ("Pet.") (Dkt. 25).) For the reasons stated below, the Petition is DISMISSED.

---

[1] All citations in this opinion refer to Petitioner's criminal docket, Case No. 15-CR-364.

1

I.   BACKGROUND

   A. The IRS Interview

On August 24, 2010, IRS agents interviewed Petitioner and her daughter, J.H., at their home (the "IRS Interview").[2] (See IRS Interview Mem. (Dkt. 29-1).) Petitioner is a native Korean speaker with limited English proficiency, and so J.H. acted as an interpreter. (Id. at 1; see also Pet'r Decl. (Dkt. 25 at ECF p.12) ¶ 6 ("I speak almost no English whatsoever.").) Respondent (the "Government") alleges—and Petitioner has not denied—that the IRS Interview "was conducted without [Petitioner's] husband being present and before she had retained counsel." (Gov't Resp. in Opp'n to Pet. ("Gov't Resp.") (Dkt. 29) at 2.)

Petitioner explained that she was an Empire officer with signatory authority on the corporate bank accounts, and that she also signed the company's tax returns. (IRS Interview Mem. at 1-2.) J.H. stated that her role included processing weekly payroll checks for Empire's mechanics, and that she provided the payroll information and other financial records to Empire's accounting firm for assistance with tax filings. (Id. at 2-3.)

The IRS agents asked whether Empire ever used check-cashing businesses to process auto insurance checks, rather than depositing those checks in the corporate bank account. (Id. at 3.) J.H. did not have an answer, and suggested that the agents ask her father about that issue. (Id.) When Petitioner was asked the same question, she explained that Empire employed 15 to 20 people "off the books" by paying them in cash on a weekly basis. (Id.) Petitioner acquired the necessary funds by endorsing certain checks made out to Empire and then cashing them at any of several nearby check-cashing businesses. (Id.) Empire did not keep records of checks

---

[2] Petitioner and J.H. agreed to proceed with the interview after being read Miranda-equivalent rights, as codified in the IRS Non-Custodial Statement of Rights. (IRS Interview Mem. (Dkt. 29-1) at 1.) See also IRS Non-Custodial Statement of Rights (Document 5661), Exhibit 9.4.5-7 to the Internal Revenue Manual.

2

cashed or employees paid in this way, and so those figures were not passed on to Empire's accountants for calculations of income or payroll taxes. (Id. at 3-4.)

### B. The Guilty Plea

Petitioner and defense counsel Edmund Mendrala appeared before the court on October 23, 2015 (the "Plea Hearing"), for the purpose of entering a guilty plea to one count of willful failure to pay payroll taxes.[3] (Oct. 23, 2015, Min. Entry; see also Plea Tr. (Dkt. 26).) The court explained that lying under oath carried the risk of criminal perjury charges (id. 3:9-12) and that Petitioner had the right to a trial (id. 9:9-11:21). The court informed Petitioner that she faced a maximum possible prison term of five years (id. 12:13-16), and emphasized that "the final responsibility for sentencing [] is [the court's] alone" (id. 16:9-15).

As part of Petitioner's guilty plea, she confirmed that no one had made her any promise as to the sentence she would ultimately receive. (Id. 19:11-13.) In Petitioner's allocution, she stated that, as Empire's owner, her "job was to collect the payroll tax and file [the] correct amount. But in order to avoid the [] payroll tax, [she] intentionally, knowingly . . . filed falsely." (Id. 19:19-22.) The court accepted Petitioner's guilty plea. (Id. 20:11-17.)

### C. Sentencing

At a preliminary sentencing hearing on June 23, 2016 (the "Preliminary Sentencing"), the parties informed the court that Petitioner had agreed to a restitution order of $770,823, "the full amount owed to the government." (Prelim. Sent. Tr. (Dkt. 28) 3:2-5.) Petitioner contested the tax loss calculation as it affected the Sentencing Guidelines, however, offering arguments based on the economics of tax deductions, the Social Security system, and a voluntary IRS reclassification program. (Id. 7:20-15:21; see also Def. Sent. Mem. (Dkt. 8).) The court rejected

---

[3] In all proceedings before the court, Petitioner communicated with the assistance of a Korean interpreter.

3

these arguments and adopted the Presentence Report's calculated Guidelines range of 24 to 30 months' incarceration. (Prelim. Sent. Tr. 16:22-17:4.) The Government stated that it would not oppose a below-Guidelines sentence—including a "non-incarceratory sentence"—in light of Petitioner's cooperation with the IRS's investigation and her willingness to pay back the full amount of restitution. (Id. 17:11-24.)

Petitioner's sentencing was continued to August 10, 2016 (the "Continued Sentencing"). (Aug. 10, 2016, Min. Entry.) The court pressed the parties for details as to the specific roles that Petitioner and her husband played at Enterprise, seeking to confirm that Petitioner was the proper person to hold responsible for the fraudulent scheme. (Cont. Sent. Tr. (Dkt. 27) 5:19-8:13.) The Government stated that they "simply [had] no evidence [that] anybody else was involved," and confirmed that they would have charged additional individuals had there been adequate evidence to do so. (Id. 7:24-8:2.) Both parties referenced an affidavit signed by Petitioner in 2012 in which she confessed to personally cashing $6.7 million in checks, and to her knowing failure to report Empire's income and cash wages to the IRS. (Id. 7:22-24 (Gov't), 16:1-4 (Pet'r); see also Park Aff. (Dkt. 29-2).)

The court emphasized the "seriousness of the offense," and explained the need to provide both "just punishment for this defendant" and also "adequate deterrence to criminal conduct in the future," given the importance of "voluntary compliance" with U.S. tax laws. (Cont. Sent. Tr. 22:4-22.) The court restated its concern that Petitioner may not have been solely or even primarily responsible for the tax fraud, but pointed to the parties' "agree[ment] that she's responsible. Solely responsible. So, if she's solely responsible, she has to be the sole person who will accept the punishment for this." (Id. 23:5-11.) The court sentenced Petitioner to one

4

year plus one day in prison, three years of supervised release, a $25,000 fine, and the agreed-upon restitution of $770,823. (Id. 23:24-24:6; see also J.)

## II. JURISDICTION OVER THE INSTANT PETITION

Section 2255 authorizes habeas petitions by "prisoner[s] in custody under sentence of a [federal] court." 28 U.S.C. § 2255(a) (emphasis added). Petitioner has been sentenced by a federal court, but she is not yet physically in custody. (See Jan. 17, 2017, Min. Entry (extending Pet'r's surrender date to March 15, 2017).) However, courts "have recognized that a variety of nonconfinement restraints on liberty satisfy the custodial requirement." Nowakowski v. New York, 835 F.3d 210, 216 (2d Cir. 2016) (collecting cases). "The custody inquiry [] 'requires a court to judge the severity of an actual or potential restraint on liberty.'" Id. (quoting Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 894 (2d Cir. 1996)).

The court finds that jurisdiction is proper in this instance because Petitioner is subject to "restrictions [] not shared by the public generally," which "require [her] physical presence at particular times and locations" and which "carry with them the potential for future adverse consequences . . . , including arrest for noncompliance." Id. at 217 (internal quotation marks and citations omitted); see also Graziose v. United States, No. 03-CV-8109 (RWS), 2004 WL 1194590, at *4 (S.D.N.Y. June 1, 2004) (collecting cases in which "federal prisoners who [were] free either pending sentencing or following sentencing" were found to be "in custody within the meaning of § 2255").

## III. DISCUSSION

Petitioner timely filed the Petition on February 3, 2017, assisted by new counsel.[4] Petitioner asserts that Mendrala provided ineffective assistance in the sentencing phase of her criminal proceedings. She argues, first, that Mendrala underestimated her likely sentence; second, that he failed to properly investigate and present mitigating evidence of Petitioner's minimal role in the tax fraud scheme; and third, that he acted unreasonably in challenging the tax loss calculation. The court finds that all three arguments lack merit, and therefore, that the Petition must be dismissed.[5]

### A. Legal Standard

"To establish that counsel's performance was constitutionally defective," a habeas petitioner must satisfy the two-prong test established in Strickland v. Washington, 466 U.S. 668 (1984). The petitioner bears the burden of showing that (1) "the lawyer's performance fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Torres v. Donnelly, 554 F.3d 322, 325 (2d Cir. 2009) (citations and internal quotation marks omitted).

"In determining whether counsel's performance was objectively deficient" under the first prong, "courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Pizzuti v. United States, No. 02-CR-1237 (LAP)

---

[4] Habeas petitions under Section 2255 are subject to a one-year statute of limitations. 28 U.S.C. § 2255(f). In this case, the one-year period runs from "the date on which the judgment of conviction [became] final." Id. § 2255(f)(1). The Petition was timely filed less than six months after the entry of judgment.

[5] Because the court finds that Petitioner has failed to assert even a plausible claim to relief, the court orders a summary dismissal with no evidentiary hearing. See 28 U.S.C. § 2255(b) (Courts are directed to hold evidentiary hearings in proceedings under Section 2255 "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."); Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011) ("A [petitioner] seeking a hearing on an ineffective assistance of counsel claim 'need establish only that he has a plausible claim of ineffective assistance of counsel, not that he will necessarily succeed on the claim.'" (quoting Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009))).

(HBP), 2014 WL 4636521, at *15 (S.D.N.Y. Sept. 16, 2014) (quoting Strickland, 466 U.S. at 689). "[E]ven if counsel's performance is found [to be] professionally unreasonable," the petitioner must still satisfy the second prong of the test: "'any deficiencies . . . must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.'" Torres, 554 F.3d at 325 (emphasis added) (quoting Strickland, 466 U.S. at 692). "In the context of sentencing, the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different." Abramo v. United States, No. 12-CV-1803 (JSR) (HBP), 2014 WL 1171735, at *11 (S.D.N.Y. Mar. 21, 2014) (quoting Garafola v. United States, 909 F. Supp. 2d 313, 331 (S.D.N.Y. 2012)); see United States v. Workman, 110 F.3d 915, 920 (2d Cir. 1997); United States v. Pozuelos-Morales, 526 F. App'x 74, 75-76 (2d Cir. 2013) (summary order).

### B. Analysis

#### 1. Counsel's Advice About Petitioner's Likely Sentence

Petitioner asserts that she "relied upon [] unduly optimistic advice" from Mendrala during her criminal proceedings. (Pet. at 2.) He allegedly "assured" her, both before and after her guilty plea, that she "would not have to serve any sentence of imprisonment due to [her] age and [her] willingness to pay" restitution in full. (Pet'r Decl. ¶¶ 15, 18.) Even if Mendrala offered erroneous advice, however, Petitioner has failed to allege prejudice. Petitioner does not seek to withdraw her guilty plea, nor does she allege that she would have declined to enter the plea had she received different advice. The fact that Petitioner may have been "shocked" by her sentence (id. ¶ 21) is not a constitutionally cognizable injury.

In any event, Petitioner was explicitly warned against relying on her attorney's "predictions" as to her likely sentence at the Plea Hearing: the court emphasized that "no one can make any promise . . . as to the sentence that [the court] will impose." (Plea Tr. 16:9-15.) The

7

Second Circuit has found that clear statements from the court during plea proceedings are sufficient to cure alleged defects in advice from defense counsel. See Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992); United States v. Mercado, 140 F. App'x 310, 311 (2d Cir. 2005) (summary order).

2. Failure to Investigate Mitigating Evidence

Petitioner alleges that she had "practically no understanding as to how [Empire] was operated" or "how payroll taxes were to be paid." (Pet'r Decl. ¶ 5.) She does not contest her liability, but argues Mendrala should have opposed an incarceratory sentence by highlighting "the minimal degree to which [Petitioner] had actually participated in the management of the company" (Pet. at 6-7), as well as her advanced age and her lack of financial sophistication (id. at 9-10).

This argument fails to satisfy either prong of the Strickland test. First, Petitioner has failed to show that counsel's performance was objectively unreasonable. Petitioner repeatedly admitted to her responsibility for, and knowledge of, the tax violations, including in the 2010 IRS Interview, her 2012 affidavit, her plea allocution, and the Continued Sentencing. Petitioner maintains her legal culpability, but now alleges that she had "practically no understanding" of Empire's business activities, legitimate or otherwise. Curiously, she fails to clarify how she was able to explain the entire check-cashing scheme during the IRS Interview in 2010 without assistance from anyone other than her daughter, who claimed no personal knowledge of the scheme. See supra Section I.A. Mendrala would have had to walk a very fine line to argue that Petitioner was sufficiently culpable to enter a guilty plea for the tax fraud, yet sufficiently uninvolved to escape any punishment other than restitution—the amount that Empire should have paid in the first place—and a fine representing less than 0.5% of the value of the illegally

cashed checks. (See J. (fine of $25,000); Park Aff. at 1 (Pet'r cashed $6.7 million in checks).) His decision to steer clear of that line does not amount to objectively unreasonable conduct.

Petitioner has also failed to show prejudice. Petitioner's incarceratory sentence may be more severe than she'd hoped for, but it is below the Guidelines range, and the court found it to be a fitting punishment for the charged offense. (See Cont. Sent. Tr. 22:4-22.) The court was at pains to confirm that Petitioner only accepted legal responsibility for crimes that she had actually committed, and explained that "if she's solely responsible, she has to be the sole person who will accept the punishment for this . . . major crime." (Id. 23:5-11.) Because Petitioner does not contest her criminal liability, she has failed to show any reasonable likelihood of a different sentencing outcome.

### 3. The Tax Loss Arguments

Petitioner faults counsel for pursuing "misguided" and "meritless" theories regarding the tax loss calculation. (Pet. at 8.) Petitioner points out that Mendrala apologized to court for any confusion or errors related to those arguments. (Id.; see also Cont. Sent. Tr. 9:5-17.) The court's response, however, dispels any notion that Mendrala's conduct was objectively unreasonable: "I take no issue with your advocacy role here. . . . That's your job and I appreciate that you're doing it." (Id. 9:18-21.) Though the tax loss arguments were ultimately unsuccessful, they do not establish a basis for finding Mendrala's performance unconstitutionally ineffective.

## IV. CONCLUSION

For the reasons set forth above, the Petition (Dkt. 25) is DISMISSED.

SO ORDERED.

Dated: Brooklyn, New York
March 7, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge